[No. 5341–1–II. Division Two. July 5, 1983.]

EURGEL G. MARTEL, ET AL, *Appellants*, v. THE CITY OF VANCOUVER, ET AL, *Respondents*.

*Gregory E. Stadter,* for appellants.

*Jerry F. King, City Attorney,* for respondent City of Vancouver.

*Brian Wolfe,* for respondents Stromgren.

REED, J.—The Martels and Crandalls appeal the Superior Court's affirmance of a variance granted to their neighbors, the Stromgrens, by the City of Vancouver Board of Adjustment. We also affirm the variance.

Lloyd and Minnie Stromgren live on a large, somewhat woodsy lot (36,840 square feet) in an area zoned RE (Residential Estate), which requires a minimum lot size of 20,000 square feet. Their home is located in the southeast

quadrant of the lot. They decided to short plat the land, thereby creating a second lot that could be developed and sold. However, the Vancouver Municipal Code, VMC 19.58.040, prohibits any platting or boundary line change that would establish a new lot "smaller than is permitted by the applicable zoning control"—20,000 square feet. They applied, therefore, for a variance, which the Martels, Crandalls, and others opposed. The Board of Adjustment (Board) held two full hearings before granting the variance. The opponents obtained review by certiorari in superior court, which upheld the variance.

In this appeal, appellants raise the following issues: (1) Did the Board's approval of a variance actually constitute approval of a land subdivision, which was outside the Board's jurisdiction? (2) Does the record support the Board's findings and conclusions, in applying VMC 20.64-.090, that a variance should be granted because of unnecessary hardships or practical difficulties resulting from peculiarities of the Stromgren property? (3) Does the property have extraordinary conditions that do not apply generally to other properties in the zone, and is the plight of the owner unique and not the result of his own action? (4) Does the record support the finding that a variance would not adversely affect nearby property? (5) Does the record support the finding that a variance would not adversely affect the City's comprehensive plan? (6) Are the Board's written findings and conclusions invalid because they were prepared several weeks after the second hearing?

■ We must uphold the Board of Adjustment's variance decision unless the Board's action was arbitrary, capricious, or contrary to law. *Lewis v. Medina,* 87 Wn.2d 19, 548 P.2d 1093 (1976). The opponents of the variance have the burden of proof. *Messer v. Snohomish Cy. Bd. of Adj.,* 19 Wn. App. 780, 578 P.2d 50 (1978).

## Board of Adjustment's Jurisdiction

Appellants argue that the Board lacked jurisdiction under the zoning ordinance to grant the variance because it

constituted a subdivision of the lot, whereas jurisdiction to authorize subdivisions or replats is vested exclusively in a Technical Platting Committee under VMC 19.54.

While it has been held that a board of adjustment has no authority to subdivide land and may not do so under the guise of issuing a variance, *Noonan v. Zoning Bd. of Review,* 90 R.I. 466, 159 A.2d 606 (1960), that is not what happened in this case. The variance did not authorize a subdivision of the Stromgrens' lot. It merely paved the way for them to apply to the Technical Platting Committee for a replat under the short subdivision ordinance.

Appellants argue further that the Board had no jurisdiction to grant a variance that impinged upon the short subdivision title in any way because the zoning ordinance and the short subdivision ordinance are mutually exclusive. We disagree. The two ordinances pertain to the same general subject matter and should be construed with reference to each other so as to give effect to both. *See State v. Houck,* 32 Wn.2d 681, 203 P.2d 693 (1949). Contemporaneous effect can be given to both kinds of ordinances in connection with a proposed subdivision by conditioning a board of adjustment's award of a zoning variance upon subsequent approval of the subdivision by the planning commission. *See* 4 A. Rathkopf, *Zoning and Planning* 71–47 (4th ed. 1983) (citing *Imperato v. Zoning Bd. of Adj.,* 91 N.J. Super. 540, 221 A.2d 751 (1966)). This exact procedure was followed in this case, and we find no error in it.

APPLICATION OF VMC 20.64.090: UNNECESSARY HARDSHIPS OR PRACTICAL DIFFICULTIES/EXCEPTIONAL OR EXTRAORDINARY CIRCUMSTANCES

VMC 20.64.090 provides as follows:

Jurisdiction—Variances. *Where there are unnecessary hardships or practical difficulties that result from peculiarities of specific property and which render it difficult to carry out the provisions of the zoning title, the board shall have power to grant a variance* in harmony with the general purpose and intent of the provisions of this

title. Such variance may vary the literal enforcement of any rules, regulations, or provisions of the zoning title relating to the use of land and/or structure and any construction, structural or equipment changes, or alterations of structures relating to the zoning title. The intent of this section is that the spirit of the title will be observed, the public interest protected, public safety secured, and substantial justice done. A *variance shall be authorized if the board finds that all the following facts and conditions exist* in each case of a request for a special exception by an application for a variance:

(1) That there are *exceptional or extraordinary circumstances or conditions applying to the subject property or to the* intended use thereof, *that do not apply generally to the other properties* in the same vicinity or zone, and that the *plight of the owner is unique and not the result of his own action.*

(2) That if the land is commercially zoned, that such land and/or structure in question cannot be reasonably used, and cannot yield a reasonable return, if used only for the purpose permitted and in accordance with the requirements in the district in which it is located, and that such variance is necessary for the preservation and enjoyment of a substantial property right of the applicant possessed by the owners of other property in the same vicinity or district.

(3) That the authorization of such *variance will not be* materially detrimental to the public welfare, not *injurious to nearby property,* nor essentially different from the provisions of the district classification in which it is located.

(4) That the granting of such variance will *not adversely affect the comprehensive plan* or studies thereof.

(5) That a conditional exception is not authorized in the applicant's situation or would not solve the unnecessary hardship or practical difficulties presented.

(Italics ours.)

Our first task is to construe this ordinance. Appellants argue, in essence, that even if the variance applicants show the existence of all five factors in the ordinance, they still must show that the property has peculiarities that result in unnecessary hardships or practical difficulties and which

render it difficult to carry out the provisions of the zoning title. The City contends, on the other hand, that the ordinance's first sentence is merely prefatory, and that inherent in an applicant's proof of the existence of the five factors is a showing of "unnecessary hardships or practical difficulties that result from peculiarities of [the] specific property", etc.

We agree with the City's construction. The ordinance states that a variance *shall* be authorized if the Board finds that all of the listed factors are present (this not being a commercial zone, number 2 does not apply). This is a mandatory directive, unmodified by reference to other language in the ordinance. The first sentence is properly regarded as prefatory—as setting forth the general grounds for granting a variance. *See, e.g., Cooper–George Co. v. Spokane,* 3 Wn. App. 416, 475 P.2d 568 (1970); 3 R. Anderson, *Zoning* § 18.30 (2d ed. 1977).

In fact, the prefatory language is largely duplicated by the considerations identified in factor 1. The only notable exception is the prefatory reference to "practical difficulties . . . which render it difficult to carry out the provisions of the zoning title," making a variance appropriate. However, appellants do not show how this clause was violated here. We believe the ordinance contemplates approval of a variance when the presence of factors 1 through 5 shows that it would pose an unnecessary hardship or practical difficulty to enforce the current zoning restrictions on the subject property.

Appellants argue that the record fails to support the Board's findings that the Stromgrens' property presents unique and exceptional circumstances that do not apply generally to other properties in the same zone, as required by VMC 20.64.090(1). We disagree. The record reveals that the lot is one of only four oversized corner lots in the RE zone, and is bounded, exceptionally, on two sides by land zoned RSL (minimum lot size of 7,300 square feet). The Stromgrens' lot is the only one of the four oversized corner lots that is somewhat trapezoidal in shape due to its location at the acute angle of the intersection of two arterial

streets.

 The remaining question is whether the evidence supports the Board's findings that the exceptional features of the lot gave rise to unnecessary hardship or practical difficulties justifying a variance. This is important because the practical difficulty or unnecessary hardship that will support a variance must relate to the land itself, and not the owner–applicant. 3 R. Anderson § 18.30. Personal hardship such as the owner's age or physical condition cannot justify a variance. *Erickson v. Portland,* 9 Or. App. 256, 496 P.2d 726 (1972). The Board was sensitive to these considerations and did not base its finding of practical difficulty principally on Mr. Stromgren's inability to maintain the property due to poor health. Rather, there was evidence that it would be difficult for any person, regardless of his health, to maintain the lot because of its unique shape and location: The lot has extensive roadside frontage along the two intersecting arterials and is within view of nearly a dozen different residences, whose owners would have had certain expectations regarding neighborhood upkeep. The evidence was sufficient to establish that the Board's decision was not arbitrary and capricious or contrary to law on this point. We note in this connection that this variance is an area variance rather than a use variance, and courts generally approve area variances upon a lesser showing of hardship or practical difficulty than is required for a use variance. 3 R. Anderson § 18.46, at 266.

### INJURY TO NEARBY PROPERTY

Appellants contend that the record contains no evidence to support the Board's finding that the variance would not be injurious to nearby property, a requirement of VMC 20.64.090(3). This contention is unfounded. Mr. Stromgren testified that he intends to clean up the overgrown portion of the property and build an attractive home on the subdivided lot with landscaping appropriate to the woodsy neighborhood. The home would replace the "pile of trash" that he said presently occupies the site. Very little addi-

tional traffic would result from a single new home. He plans to extend hedges on both the Martels' and Crandalls' sides of the lot so they will not have to look at the new house if they find it objectionable. The city ordinance required that notice of the hearing be given to the owners of all property within 200 feet of that for which the variance was sought, and Mr. Stromgren showed the Board that 23 of the 26 property owners within 200 feet had no objection to the variance—inferentially because they did not believe it would injure their property. Although some opponents did testify that the variance would injure their properties, our function is not to weigh the evidence, but only to see if evidence in the record supports the Board's decision so that it is not arbitrary or capricious. Such evidence is present.

Additionally, appellants argue that the Board failed to give proper weight to the existence of a restrictive covenant providing that only one single family dwelling could be built on the lot as originally platted. They contend that the covenant was designed to preserve the neighbors' rights to privacy and enjoyment of open space, and that a subdivision in violation of the covenant is injurious to them. Although a private covenant may provide grounds for a separate action to enjoin a proposed usage of land, the general rule is that such a covenant is not grounds for denial of a zoning variance. 8 E. McQuillin, *Municipal Corporations* § 25.09 (3d ed. 1976); *Suess v. Vogelgesang,* 151 Ind. App. 631, 281 N.E.2d 536 (1972). Moreover, the record shows that some 25 percent of the lots in the RE zone are smaller than the size contemplated for the zone because of subdivision activity that predated the zoning ordinance. Even if these past deviations from the covenant are not so substantial as to invalidate the covenants, *see Sandy Point Imp. Co. v. Huber,* 26 Wn. App. 317, 613 P.2d 160 (1980), they are sufficient to support the notion that violation of the covenant would not be injurious per se to nearby property.

### ADVERSE EFFECT ON COMPREHENSIVE PLAN

Appellants argue that the Board's findings are insufficient to support its conclusion that the variance would not adversely affect the City's comprehensive plan. We disagree. The Board found that the increase in density caused by the variance is de minimis in its impact upon the overall density of the zone; that the variance is consistent with one of the goals of the comprehensive plan, *i.e.*, better utilization of residential property; and, given the practical difficulties peculiar to the Stromgrens' lot, that the variance does not create a precedent with respect to other lots in the zone not similarly situated. These findings are sufficient to demonstrate compatibility with the comprehensive plan.

### LATE PREPARATION OF FINDINGS

Finally, appellants assign error to the Board's entry of written findings of fact, prepared by the city attorney and dated August 8, 1979, on two grounds: (1) the Board violated VMC 20.64.170, which requires it "at the conclusion of its hearing on any variance" to make findings on which its decision is predicated, in that the findings were not made promptly after the July 17 hearing; (2) the written findings include factual determinations that were not articulated by the Board at the conclusion of its deliberations at the hearing.

■■ This argument, too, lacks merit. Even where an ordinance requires entry of supporting findings and conclusions contemporaneously with the administrative body's decision, a delay in entering them is not fatal to the action unless one of the parties is prejudiced by the delay. *West Hill Citizens for Controlled Dev. Density v. King Cy. Coun.*, 29 Wn. App. 168, 627 P.2d 1002 (1981). Written findings and conclusions entered by a public body adjudicating land use issues may serve to elucidate the scope of the body's immediate oral decision. *See North St. Ass'n v. Olympia*, 96 Wn.2d 359, 635 P.2d 721 (1981). Appellants allege no prejudice from the 3–week delay in this case. The findings accurately reflect the proceedings and the Board's

deliberations. We find no error in the procedure followed here.

The Board's grant of a variance is affirmed.

WORSWICK, A.C.J., and PETRIE, J., concur.